1 **MICK LEVIN, ESQ.** (AZ SBN 021891)
micklevin@mlplc.com
2 **MICK LEVIN, P.L.C.**
3 3401 N 32nd Street
Phoenix, AZ 85018
4 Ph: 480-865-3051
Fx: 800-385-1684
5
6 Angela J. Nehmens (CA SBN 309433)
*To Be Admitted Pro Hac Vice*
7 **LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
8 San Francisco, California 94110
9 Telephone: (415) 426-3000
Facsimile: (415) 426-3001
10 anehmens@levinsimes.com

11

12 *Attorneys for Plaintiff*

13 **IN THE UNITED STATES DISTRICT COURT**

14 **DISTRICT OF ARIZONA**

15 | | |
|---|---|
| Scott Kimmel, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Samsung SDI Co. Ltd; and Amazon.Com, Inc.; Amazon.Com Services, Inc.; | **1. STRICT LIABILITY – DESIGN DEFECT**<br>**2. STRICT LIABILITY – FAILURE TO WARN**<br>**3. NEGLIGENCE**<br>**5. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**<br>**6. NEGLIGENT MISREPRESENTATION**<br>**7. VIOLATION OF THE MAGNUSON-MOSS ACT** |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

1

Plaintiff, Scott Kimmel, by his undersigned attorneys, brings claims against Defendants Samsung SDI Co. Ltd., a Korean corporation, Amazon.com, Inc., a Washington corporation, and Amazon.com Services, Inc., a Washington corporation, and alleges as follows:

## **PARTIES**

1. Plaintiff, Scott Kimmel, is an individual and is now, and at all time relevant, a resident of and domiciled in Maricopa County, Arizona.

2. Defendant Samsung SDI Co. Ltd., (hereinafter "Samsung Korea") is a South Korean corporation with its principal place of business at Giheung Headquarters, 150-20, Gongse-ro Giheung-gu, Yongin-si, Gyeonggi-do. Upon information and belief, Samsung SDI Co. Ltd. at all times relevant was, authorized to do business in the State of Arizona and was and is engaged in substantial comings and business activities in Arizona.

3. Defendant Samsung Korea was and is engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing lithium-ion batteries, including the battery that is the subject of this lawsuit (the "Subject Battery").

4. Samsung Korea does not maintain any physical presence in the United States. It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

5. The instant case involves the explosion of a lithium-ion battery and the subject battery, and other similar/identical batteries, was advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the Samsung Defendants and one or more distributors and/or retailers who sell and distribute Samsung products, including the subject battery and similar batteries to consumers.

6. At all pertinent times, Samsung Korea derived substantial revenue from the sale of lithium-ion batteries such as the Subject Battery in the State of Arizona.

7. At all times material hereto, Defendant Amazon.com, Inc., (hereinafter "Amazon") was a Washington Corporation with its principal place of business located at 410

Terry Avenue North, Seattle, Washington.  Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest Suite 304 Tumwater, Washington 98501.

8.  At all times material hereto, Defendant Amazon.com Services, Inc. (hereinafter "Amazon Fulfillment") is a Washington Corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.  Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest Suite 304 Tumwater, Washington 98501.

9.  Defendant Amazon and Defendant Amazon Fulfillment will collectively be referred to as the "Amazon Defendants."

10. The instant case involves the explosion of a lithium-ion battery and the subject battery, and other similar/identical batteries, was advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the Samsung Defendant and one or more distributors and/or retailers who sell and distribute Samsung products, including the subject battery and similar batteries to consumers.

11. At all pertinent times, Samsung Defendant derived substantial revenue from the sale of lithium-ion batteries such as the Subject Battery in the State of Arizona.

**JURISDICTION AND VENUE**

12. Subject matter jurisdiction in this Court is appropriate because there is complete diversity and the amount in controversy exceeds seventy-five thousand ($75,000) dollars, pursuant to 28 U.S.C. § 1332.

13. This Court has personal jurisdiction over Defendant Samsung SDI Co. Ltd because of its purposeful, continuous, and systematic contacts with Arizona entities and the Arizona market, and because its products are sold in and throughout Arizona.

14. This Court is an appropriate venue for the cause of action because the incident which caused the injuries to Plaintiff occurred in the State of Arizona and because substantial acts or omissions took place in this district.

15. This Court has personal jurisdiction over the Amazon Defendants because of their

purposeful, continuous, and systematic contacts with Arizona entities and the Arizona market.

**FACTUAL ALLEGATIONS**

16. E-cigarettes, also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1]  They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

17. E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves and other chemicals contained in traditional, combustible cigarettes.[3]  E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice," "e-liquid," or "pods," providing a physical sensation similar to tobacco smoke.

18. Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

19. E-cigarettes differ from traditional cigarettes in a critical way:  the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component.   While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

20. E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape.  When the device malfunctions or fails, the battery can be shot out

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf
[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

like a bullet or rocket.[4]

21. At least two deaths have been reported in relation to an exploding e-cigarette.[5]

22. E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.

23. Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012. Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[6]

24. In January 2014, there were 466 brands of e-cigarettes and over 7,000 unique e-cigarette juice flavors available for sale.[7]

25. Until recently, e-cigarette marketing has been unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena. Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco. Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

26. Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-

---

[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.
[6] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.
[7] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.

cigarette devices are unknown.[8]

27. In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[9]

**The Injury**

28. On or around May 31, 2018, Plaintiff purchased the subject Samsung battery from Amazon.

29. On or around August 27, 2018, Plaintiff was on his lunch breach with e-cigarette mod containing the subject Samsung battery in the pocket of his shorts.  Suddenly, and without warning, Plaintiff felt a sharp, searing pain and saw orange sparks emitting from his pocket onto his right leg. Plaintiff was able to extinguish the flames that engulfed the lower half of his body by patting them down with his hand.

30. Plaintiff went to Abrazo Emergency Department where he was diagnosed and initially treated for second and third degree burns on his hands and covering forty (40) percent of his right leg.

31. Plaintiff was transferred via ambulance to Valleywise Health Burn Center in Phoenix, Arizona where he was hospitalized for eight (8) days.  Plaintiff underwent several procedures including multiple skin grafts.

32. Plaintiff spent three (3) weeks at home to recover from his injuries and was required to wear full length compression garments underneath his clothes.

33. As a result of the explosion, Plaintiff has prominent scars on his leg that serve as a constant reminder of this painful incident.  Plaintiff is left physical and emotionally scarred

---

[88] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*. Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).
[9] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

from the burns.

## First Cause of Action Against Defendant Samsung SDI Co., Ltd.
## (Products Liability – Strict Liability—Design Defect)

34. Plaintiff referrers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

35. At all times mentioned herein, Defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, wholesaling, supplying, and/or marketing lithium-ion batteries such as the Subject Battery, and e-cigarette devices or mods (collectively "E-CIG PRODUCTS").

36. Defendants placed the Subject Battery for sale with knowledge that it would be used without inspecting for dangers or defects. Defendants knew or should have known that the ultimate users or consumers would not or could not inspect these products for dangerous conditions, and that the detection of such defects and dangers would be beyond the capabilities of such persons.

37. Defendants manufactured, fabricated, designed, assembled, distributed, and/or sold the Subject Battery with defects in both design and manufacturing which made them dangerous, hazardous and unsafe for their intended use.

38. The Subject Battery was defective and unreasonably dangerous to the ultimate users and consumers when sold and distributed by Defendants in the following ways:

   a. The Subject Battery failed to perform as safely as an ordinary consumer would expect when used in an intended or foreseeable manner;
   b. The Subject Battery was sold in an unsafe, unreasonably dangerous and defective condition such that the battery had an unreasonable propensity to heat and catch fire during normal and foreseeable conditions;
   c. The Subject Battery was sold in an unsafe, unreasonably dangerous and defective condition such that the battery had an unreasonable propensity to short-circuit and explode during normal and foreseeable conditions;
   d. The Subject Battery was defective due to inadequate, or the absence of, warnings

7

or instructions to alert users regarding the hazardous conditions described herein and to provide instructions on safe use.

39. On August 27, 2018, as Plaintiff was using the e-cigarette mod and component parts, including the Subject Battery, in a reasonably foreseeable and intended manner, the Subject Battery suddenly exploded, causing severe, painful and permanent injuries to his leg and hand.

40. At the time of the incident, the Subject Battery was in substantially the same condition as when introduced into the stream of commerce by Defendants and were being used by Plaintiff in a reasonably foreseeable manner.

41. For the reasons set forth above, the Subject Battery was unreasonably dangerous to foreseeable users, including Plaintiff.

42. The risk of danger in the design of the Subject Battery outweighed any benefits of the design, and safer alternative designs were available at the time of manufacturer and supply. Therefore, the Subject Battery presented a substantial and unreasonable risk of serious injuries to users of said products, such as Plaintiff.

43. The above referenced defects in the Subject Battery were the proximate cause of the Plaintiff's injuries and damages.

44. The above referenced conduct of Defendants, and each of them, was and is willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of purchasers, users and consumers of said products, including Plaintiff. Plaintiff, for the sake of example, and by way of punishing Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff Scott Kimmel pray judgement against Defendants, and each of the, as set forth herein.

**Second Cause of Action Against All Defendants**

**(Products Liability – Strict Liability – Failure to Warn)**

45. Plaintiff referrers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

46. Defendants knew or should have known that the Subject Battery would be used in the manner used by Plaintiff in 2018.

47. In researching, testing, designing, manufacturing, labeling, selling, distributing, advertising, promoting, marketing, servicing, and/or supplying E-Cig Products, Defendants, and each of them, did so in conscious disregard for the safety of the users and consumers of said products, as well as bystanders and others who would foreseeably come into contact with said products.  Upon information and belief, Defendants, and each of them, had specific prior knowledge that there was a high risk of injury or death resulting from the use of said products.

48. Upon information and belief, Defendants, and each of them, were aware that users of e-cigarettes and related products had no knowledge or information indicating that E-Cig Products, including the Subject Battery cause serious and life-threatening injury, and Defendants, and each of them, knew that the users of E-ig Products, like Plaintiff, would assume, and in fact did assume, that the E-Cig Products were safe, when in fact said products posed an unreasonable hazard to human life and safety.

49. An ordinary consumer, such as Plaintiff, would not have recognized the potential risks and dangers inherent in the Subject Battery, nor would ordinary consumers have the ability and requisite knowledge to inspect these products for defects and dangers.

50. Upon information and belief, Defendants, and each of them, intentionally failed to warn consumers of said risks, and fraudulently, knowingly, consciously and actively concealed and suppressed said knowledge from users, consumers, and other members of the general public, including Plaintiff in the following ways:

   a. Defendants never warned Plaintiff that the Subject Battery had the propensity to explode or violently fail during its foreseeable and expected use;
   b. Defendants never warned Plaintiff that the subject battery was not designed to be used with e-cigarettes or personal vaping devices;
   c. Defendants never warned Plaintiff that the Subject Battery lacked critical safety components that are regularly incorporated into other similar batteries.

51. Upon information and belief, the aforementioned conduct of Defendants, and

each of them, was motivated by the financial interests of Defendants in the continuing, uninterrupted manufacture, distribution, supply and sale of said products. In pursuance of said financial motivation, Defendants, and each of them, consciously disregarded the safety of users and consumers of said products.

52. Defendant's failure to warn Plaintiff of the above referenced known defects and dangers of the Subject Battery were the proximate cause of the Plaintiff's injuries and damages.

53. The above referenced conduct of Defendants, and each of them, was and is willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of purchasers, users and consumers of said products, including Plaintiff. Plaintiff, for the sake of example, and by way of punishing Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff Scott Kimmel prays for judgement against Defendants, and each of them, as set forth herein.

### Third Cause of Action Against All Defendants
### (Products Liability – Negligence)

54. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as if fully stated herein.

55. Upon information and belief, and at all times herein mentioned, Defendants and each of them, negligently, recklessly and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed and advertised the Subject Battery that it was dangerous and unsafe for their intended and/or reasonably foreseeable use.

56. Defendants, and each of them, owed a duty to Kimmel to exercise reasonable care in the design, manufacture, inspection, distribution and/or sale of the Subject Battery to ensure that the Subject Battery was safe for their intended and/or reasonably foreseeable use.

57. Defendants, and each of them, knew or in the exercise of due care should have known that the Subject Battery would be used without inspection in an unreasonably dangerous condition and would create a foreseeable risk of harm to users, such as Plaintiff.

58. Defendants, and each of them, were under a duty to properly and adequately

instruct, warn and/or sell the Subject Battery in a reasonably safe condition as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with it, including Plaintiff.

59. Defendants, and each of them, failed to exercise the amount of care in the design, manufacture, inspection, distribution, and sale of the Subject Battery that a reasonably careful manufacturer, designer, supplier or seller would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

60. Defendants, and each of them, knew or reasonably should have known that the Subject Battery was dangerous or were likely to be dangerous when used or misused in a reasonably foreseeable manner. Defendants, and each of them, knew or reasonably should have known that ordinary users, like Plaintiff, would not realize the hazards and risks posed by the Subject Battery.

61. Upon information and belief, at the time of the incident, Plaintiff was not aware that the Subject Battery presented any risk of injury to him, and had not been advised or informed by anyone that the Subject Battery could explode or otherwise pose a risk to his health and safety.

62. Defendants, each of them failed to adequately warn purchasers, consumers, and end user, including Plaintiff, about the severe hazards posed by the Subject Battery and/or instructed on the safe use of such products. A reasonable manufacturer, distributor, designer, supplier, or seller under the same or similar circumstances would have warned of the dangers posed by the Subject Battery, or instructed on the safe use of the Subject Battery.

63. Defendants, and each of them, negligently provided incorrect and/or inadequate recommendations, advice, and instruction to Plaintiff regarding the combination and compatibility of the Subject Battery and its use.

64. Defendant's negligence was the proximate case of Plaintiff's injuries and damages.

WHEREFORE, Plaintiff Scott Kimmel prays for judgement against Defendants, and each of them, as set forth herein.

**Fourth Cause of Action Against All Defendants**

11

**(Breach of Implied Warranty)**

65. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs by reference as though fully stated herein.

66. Defendants are, and at all relevant times were, in the business of manufacturing, distributing, and/or selling electronic cigarette related products, including lithium-ion batteries such as the one Plaintiff purchased.

67. At the time Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the Subject Battery, it knew of the intended use and/or reasonably foreseeable use of the Subject Battery, knew or had reason to know that Plaintiff would purchase Subject Battery for the purpose of vaping, and impliedly warranted the Subject Battery to be of merchantable quality and safe for such use.

68. Defendants knew or had reason to know that consumers would rely on its skill and judgment to select or furnish goods for sale that were suitable for that purpose and safe for such use.

69. Consumers, like Plaintiff, relied on the skill, judgment, knowledge, and representations of Defendants, in purchasing and using E-CIG PRODUCTS in the intended and/or foreseeable manner. As a direct and proximate result of the breach by Defendants, Plaintiff purchased and used the Subject Battery as intended and/or reasonably foreseeable manner.

70. The breach of implied warranty by Defendants was a substantial factor in causing the injuries to Plaintiff as previously alleged.

**Fifth Cause of Action Against Defendant Samsung SDI Co. Ltd.**

**(Negligent Misrepresentation)**

71. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs by reference as though fully stated herein.

72. Defendants, and each of them, had a duty to be accurate and truthful in representing to purchasers, consumers and end users, including Plaintiff, that the Subject Battery was safe and effective for use.

73. Defendants, and each of them, failed to exercise ordinary care in making representations concerning safety of the Subject Battery while they were involved in the research, design, manufacture, sale, testing, quality assurance, quality control, and distribution of the Subject Battery because Defendants, and each of them, misrepresented the risks associated with the Subject Battery.

74. Defendants, and each of them, breached their duty to consumers, including Plaintiff, in representing that Subject Battery was safe for their intended and/or reasonably foreseeable use.

75. Upon information and belief, and at all relevant times herein, Defendants, and each of them, made the aforementioned representations with actual and/or constructive knowledge that the Subject Battery had been insufficiently tested, or had not been tested at all, for safety when used as intended or in a reasonably foreseeable manner.

76. Upon information and belief, and at all relevant times, Defendants, and each of them, intended that consumers, including Plaintiff, rely on the aforementioned representations, and Plaintiff did in fact rely on the aforementioned representations by Defendants.

77. As a direct and proximate result of the negligent representation by Defendants, and each of them, Plaintiff purchased and used the Subject Battery as intended and/or reasonably foreseeable, which directly and proximately caused Plaintiff's injuries as previously alleged. The negligent representation by Defendants, and each of them, was a substantial factor in causing the injuries to Plaintiff as previously alleged.

WHEREFORE, Plaintiff Scott Kimmel prays for judgement against Defendants, and each of them, as set forth herein.

### Sixth Cause of Action Against Defendant Samsung SDI Co. Ltd.
### (Violation of the Magnuson-Moss Act)

78. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs by reference as though fully stated herein.

79. The subject batteries are "consumer products" as defined in 15 U.S.C. § 2301 (1).

80. Plaintiff Scott Kimmel is a "consumer" as defined in 15 U.S.C. § 2301(3).

81. The Defendants are "suppliers" and "warrantors" as defined in 15 U.S.C. § 2301 (4) and (5).

82. The defective batteries' implied warranties are covered under 15 U.S.C. §2301(7).

83. The Defendants breached implied warranties by: (a) designing, manufacturing, and selling to Plaintiff, defective and unsafe batteries; (b) providing lithium-ion batteries that are not merchantable and not fit for their ordinary purpose of safely using an e-cigarette because the batteries present an unreasonable risk of thermal runaway and explosions; and (c) not incorporating safety measures to eliminate the identified defects.

84. At the time Defendants manufactured, sold, distributed, and/or placed the batteries into the stream of commerce, Defendants knew or should have known that the batteries had an inherently defective design that posed a unique risk of catching fire, thermal runaway, and/or explosion.

85. Defendants breached their implied warranty of the merchantability by selling, manufacturing, distributing, supplying, and/or placing into the stream of commerce the defective battery and failing to replace the defective battery within a reasonable time and without charge.

86. As a result of the foregoing, Plaintiff has suffered damages.

87. The Defendants' breach was the proximate cause of Plaintiffs' injuries and damages.

WHEREFORE, Plaintiff Scott Kimmel prays for judgement against Defendants, and each of them, as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For Plaintiff's general damages according to proof;
2. For Plaintiff's medical and related expenses according to proof;
3. For Plaintiff's loss of income according to proof;
4. For punitive damages according to proof;

14

5. For Plaintiff's prejudgment interest according to proof, pursuant to Arizona Revised Statute § 44-1201;

6. For Plaintiff's costs of suit herein; and

7. For such other and further relief as this Court deems just and proper.

Dated: October 15, 2020                                   Respectfully submitted,

                                    MICK LEVIN, P.L.C.
/s/ Mick Levin
Mick Levin
3401 N 32nd Street
Phoenix, AZ 85018

Angela J. Nehmens (CA SBN 309433)
*To Be Admitted Pro Hac Vice*
1700 Montgomery Street, Suite 250
San Francisco, California 94110

*Attorneys for Plaintiff*